# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

Deborah S. Hunt
Clerk

100 EAST FIFTH STREET, ROOM 540
POTTER STEWART U.S. COURTHOUSE
CINCINNATI, OHIO 45202-3988

Tel. (513) 564-7000
www.ca6.uscourts.gov

Filed: April 19, 2021

Mr. John Marshall Jones
Mr. Emmett Lee Whitwell
Shelby County Attorney
160 N. Main Street
Suite 950
Memphis, TN 38103

Mr. Daniel Alan Seward
Law Office
4510 Chicksaw Road
Memphis, TN 38117-0000

    Re:  Case No. 20-5375, *Jason Cunningham v. Shelby County, TN, et al*
           Originating Case No. : 2:18-cv-02185

Dear Counsel,

  The court today announced its decision in the above-styled case.

  Enclosed is a copy of the court's opinion together with the judgment which has been entered in conformity with Rule 36, Federal Rules of Appellate Procedure.

                                Yours very truly,

                                Deborah S. Hunt, Clerk

                                Cathryn Lovely
                                Deputy Clerk

cc: Mr. Thomas M. Gould

Enclosures

Mandate to issue.

RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0085p.06

# UNITED STATES COURT OF APPEALS

FOR THE SIXTH CIRCUIT

---

JASON CUNNINGHAM, individually and as adult natural son and sole wrongful death beneficiary and next of kin, affiant and administrator ad litem and personal representative for Nancy Jane Lewellyn, Deceased, and Estate of Nancy Jane Lewellyn,

*Plaintiff-Appellee*,

v.

SHELBY COUNTY, TENNESSEE; SHERIFF WILLIAM OLDHAM,

*Defendants*,

ROBERT PASCHAL and MARVIN WIGGINS, individually and in their official capacities as Shelby County Sheriff's Deputies,

*Defendants-Appellants*.

No. 20-5375

---

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 2:18-cv-02185—Thomas L. Parker, District Judge.

Argued: November 19, 2020

Decided and Filed: April 19, 2021

Before: NORRIS, SUTTON, and KETHLEDGE, Circuit Judges.

---

**COUNSEL**

**ARGUED:** E. Lee Whitwell, SHELBY COUNTY ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellants. Daniel A. Seward, SEWARD LAW FIRM, Memphis, Tennessee, for Appellee. **ON BRIEF:** E. Lee Whitwell, John Marshall Jones, SHELBY COUNTY

ATTORNEY'S OFFICE, Memphis, Tennessee, for Appellants.  Daniel A. Seward, SEWARD LAW FIRM, Memphis, Tennessee, for Appellee.

---

## OPINION

---

ALAN E. NORRIS, Circuit Judge.  This appeal has its origins in the fatal shooting of Nancy Lewellyn by Shelby County, Tennessee, deputy sheriffs Robert Paschal and Marvin Wiggins.  The representative of Lewellyn's estate filed this action pursuant to 42 U.S.C. § 1983, alleging that the deputies used excessive force in violation of the Fourth Amendment's guarantee that citizens have the "right to be secure in their persons . . . against unreasonable . . . seizures."  U.S. Const. amend. IV.

Deputies Paschal and Wiggins appeal from the district court's denial of their motion for summary judgment based upon their claims of qualified immunity.  Two features distinguish this case from the typical excessive force claim: the entire shooting incident was recorded by dashboard cameras and "screen shots"—stop action frames from the recordings—were relied upon by the district court when analyzing the shooting.  When videotape footage exists, the reviewing court need not credit the version of a party who asserts facts "blatantly contradicted" by the videotape; rather it should view the facts in the light depicted by the videotape.  *Scott v. Harris*, 550 U.S. 372, 380-81 (2007); *see also Rudlaff v. Gillispie*, 791 F.3d 638, 639 (6th Cir. 2015).

### I.

Each of the dashcam videos begins with the receipt of the dispatcher's message informing the deputies of the situation which resulted in the shooting at issue.  We begin there.

Around noon on March 17, 2017, the dispatcher for the Shelby County Sheriff's Department alerted three of the department's deputies to the potential danger posed by a 911 caller.  That caller was Nancy Lewellyn.  She told the dispatcher that "she was depressed and suicidal, that she had a gun, and that she would kill anyone who came to her residence." (Page ID 645.).  Three deputies—Justin Jayroe, Paschal and Wiggins—responded.  Each drove a Sheriff's

Department cruiser equipped with a dashboard camera, which recorded video, sound, and the time of day.

The deputies were also aware from the dispatcher that Lewellyn was "suffering from some type of mental illness and/or crisis," and that she was saying she was armed with "what may be a .45 caliber pistol." (Page ID 646.)

Deputy Jayroe arrived first, shortly after 12:13 p.m., and parked his cruiser facing Lewellyn's house. Deputy Paschal arrived soon thereafter and parked behind him, as did Deputy Wiggins.

At 12:14 p.m., Lewellyn walked out of her front door and turned towards the driveway in front of her home's garage where a sedan was parked. She carried something in her right hand, which was later determined to be a BB handgun but resembled a .45 caliber pistol.

The video recorded by the dashboard camera in Jayroe's cruiser shows that she began walking towards the driveway and, as she proceeded, began to raise the handgun. One of the deputies yelled to her. The parties disagree whether the video shows Lewellyn beginning to turn towards the deputies. It was then that Paschal fired his service pistol once. A second shot followed after a short pause. As Lewellyn continued walking with her right arm extended horizontally and the pistol pointed in the direction of her car, Deputy Wiggins, who was the last to arrive and who had initially taken cover behind the parked cruiser, also began shooting. After reaching the vehicle, Lewellyn leaned on its hood briefly and then turned back toward the house. As the firing continued, she took a few steps and collapsed. A total of eleven seconds had elapsed since she exited her house.

Altogether, ten shots had been fired; eight struck Ms. Lewellyn. Although not visible to the deputies, nor to us on the video, she had deposited the BB handgun on the sedan's hood before turning back. As she lay on the driveway, the deputies approached her and demanded that she show her hands before discovering that she was unarmed. They rendered medical aid while awaiting EMS personnel. Ms. Lewellyn died at the scene.

## II.

We review de novo the district court's denial of defendants' motion for summary judgment based upon qualified immunity. *Stoudemire v. Mich. Dep't of Corrs.*, 705 F.3d 560, 565 (6th Cir. 2013).

Qualified immunity shields federal and state officials from money damages unless a plaintiff alleges facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Because both prongs must be satisfied by the plaintiff, we are permitted to decide which prong of the qualified immunity equation to tackle first. *al-Kidd*, 563 U.S. at 735 (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)).

We will begin by considering the second prong, which asks whether on March 17, 2017, it was "clearly established" that deputies Paschal and Wiggins' resort to lethal force violated a Fourth Amendment right "of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "Because the focus is on whether the officer had fair notice that her conduct was unlawful, reasonableness is judged against the backdrop of the law at the time of the conduct." *Brosseau v. Haugen,* 543 U.S. 194, 198 (2004). Although the Supreme Court's "case law does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate." *White*, 137 S. Ct. at 551 (quotation omitted). "In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Id*. (internal quotation marks omitted). Plaintiff bears the burden of showing that defendants are not entitled to qualified immunity. *Untalan v. City of Lorain*, 430. F.3d 312, 314 (6th Cir. 2005).

The district court pointed to precedent from this court that it believed had clearly established before March of 2017 that, for Paschal and Wiggins to be entitled to qualified immunity under the circumstances of this case, they must have perceived a threat to themselves or others from Nancy Lewellyn. Then, recounting conclusions it had drawn from its denial of qualified immunity under the first prong, the court concluded that "[u]sing lethal force when a disputed view of the evidence suggests that Lewellyn neither pointed her gun toward the officers nor used the

No. 20-5375          *Cunningham v. Shelby Cnty., Tenn., et al.*          Page 5

gun in a threatening way violates a clearly established Fourth Amendment right under Sixth Circuit precedent." (Page ID 747.)

The court relied upon three cases from our court to support its conclusion that defendants had fair warning that their conduct violated the Fourth Amendment. The first of these cases, *King v. Taylor*, 694 F.3d 650 (2012), was also cited by plaintiff's counsel during oral argument in response to a request that he point us to a case based upon facts sufficiently similar to those before us that clearly established that the deputies' use of deadly force violated the Fourth Amendment.

In *King*, the district court analyzed a dispute over whether the victim of a deadly shooting had pointed a gun at the officer just before being shot, as the officer had related. Although his account was called into question by expert forensic evidence that the position of the victim's body made the officer's version unlikely, the district court concluded qualified immunity was warranted.

Noting that the plaintiff's estate, as the non-moving party, was entitled to have courts view the facts in the light most favorable to the estate, a panel of this court concluded that fact issues precluded qualified immunity. *Id.* at 664.

The circumstances in *King* are easily distinguished from those before us. First, because the events in this case are recorded on video, the facts are viewed in the video's light, not in a light favorable to plaintiff. Second, no competing versions of material fact are before us in this appeal, as the evidence before us is undisputed, since it is revealed on the video. Accordingly, *King* cannot represent "existing precedent [that] squarely governs the specific facts at issue" in this appeal. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018).

In addition to *King*, the district court construed *Brandenburg v. Cureton*, 882 F.2d 211 (6th Cir. 1989), and *Dickerson v. McClellan*, 101 F.3d 1151 (6th Cir. 1996), as supporting the proposition that "the use of lethal force against an armed suspect who does not pose an imminent threat of harm constitutes a Fourth Amendment violation." (Page ID 744.) While we have no quarrel with the proposition of law stated by the district court, the devil is in the details. In both *Brandenburg* and *Dickerson*, law enforcement officers fatally shot an individual who, in the moments preceding his death, had possessed and discharged a firearm. As in *King*, the district court in each case found that qualified immunity was inappropriate because conflicting evidence

existed concerning whether the deceased posed an imminent threat to the officers or others. Because the evidence must be viewed in a light most favorable to the non-moving party, the district courts each found that the issue should be submitted to the jury; no videotapes of the incidents at issue existed. The situation facing us in the instant appeal is distinguishable because we view the facts in the light depicted by the videotape, *Rudlaff*, 791 F.3d at 639. In contrast to the three cases relied upon by the district court, there is no dispute about how the shooting of Ms. Lewellyn unfolded. Our task is to determine whether the videotapes portray a constitutional violation of the kind that a reasonable deputy should have understood.

None of the three cases relied upon by the district court identifies situations where officers acting under circumstances similar to those faced by deputies Paschal and Wiggins were held to have violated the Fourth Amendment. *See White*, 137 S. Ct. at 552 (holding that "clearly established law" should not be defined at a high level of generality); *D.C. v. Wesby*, 138 S. Ct. 577, 590 (2018). None of them involved the ultimate victim calling the police to declare that she possessed a firearm and intended to use it against anyone who came to her residence. And in none of them was it undisputed that the victim of the police shooting was brandishing a firearm in the manner Lewellyn displayed in the video. Deputy Paschal said in his deposition that he felt threatened by her display of the gun as he perceived her beginning to turn in the deputies' direction. The district court's reliance on a stop action "screen shot" notwithstanding (see Part III), Paschal's perception is consistent with the video viewed in real time.

In reaching this conclusion, we return to the fundamental axiom that excessive force claims are analyzed under an objective reasonableness standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). In *Graham*, the Court explained that the application of the reasonableness standard in this context "requires careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* at 396 (citation omitted). In addition, "[t]he 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Id.* In our view, the "facts and circumstances" support the deputies'

contention that reasonable officers would perceive that Lewellyn posed an immediate threat to their safety.

As neither plaintiff nor the district court has pointed us to existing precedent that squarely governs the specific facts and circumstances of this appeal that would have given Deputies Paschal and Wiggins fair notice that their conduct was unlawful, they are entitled to qualified immunity.

### III.

Because plaintiff cannot prevail on the second prong of the qualified immunity analysis, we need not delve deeply into the district court's conclusion with respect to the first prong: that material questions of fact precluded summary judgment in favor of deputies Paschal and Wiggins.

Specifically, we are troubled by the district court's use of "screen shots" to analyze the dashcam videos. By relying on screen shots, a court would violate the teaching of *Graham* against judging the reasonableness of a particular use of force based upon 20/20 hindsight. While the district court acknowledged that it "spent much time pinpointing moments" to help it to establish what occurred, it conceded that such moments "do not tell the full story" in light of "how quickly the incident occurred." (Page ID 716, n.9). We agree and therefore believe that the district court erred by including several screen shots in its opinion to support its conclusions. For example, directly below one screen shot, the court stated that "[b]ased on the video footage, the Court finds that a genuine dispute of material fact exists about whether Lewellyn pointed her gun in the deputies' direction when she reached the driveway." (Page ID 721.) To the extent that the district court relied upon screen shots, as it apparently did here, to decide whether it was objectively reasonable for the officers to use lethal force, it erred. The deputies' perspective did not include leisurely stop-action viewing of the real-time situation that they encountered. To rest a finding of reasonableness on a luxury that they did not enjoy is unsupported by any clearly established law and would constitute reversible error.

### IV.

For the foregoing reasons, we **vacate** the judgment of the district court and **remand** the cause with instructions to grant summary judgment to defendants-appellants based upon qualified immunity.

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

No. 20-5375

JASON CUNNINGHAM, individually and as adult natural son and sole wrongful death beneficiary and next of kin, affiant and administrator ad litem and personal representative for Nancy Jane Lewellyn, Deceased, and Estate of Nancy Jane Lewellyn,

    Plaintiff - Appellee,

    v.

SHELBY COUNTY, TENNESSEE; SHERIFF WILLIAM OLDHAM,

    Defendants,

ROBERT PASCHAL and MARVIN WIGGINS, individually and in their official capacities as Shelby County Sheriff's Deputies,

    Defendants - Appellants.

**FILED**
Apr 19, 2021
DEBORAH S. HUNT, Clerk

Before: NORRIS, SUTTON, and KETHLEDGE, Circuit Judges.

# JUDGMENT

On Appeal from the United States District Court for the Western District of Tennessee at Memphis.

THIS CAUSE was heard on the record from the district court and was argued by counsel.

IN CONSIDERATION THEREOF, it is ORDERED that the judgment of the district court is VACATED and REMANDED with instructions to grant summary judgment to Robert Paschal and Marvin Wiggins based upon qualified immunity.

**ENTERED BY ORDER OF THE COURT**

Deborah S. Hunt, Clerk